**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON A. PERLOW, | Case No. 2:13-cv-00749-ODW(SHx) |
|              Plaintiff, | **ORDER GRANTING DEFENDANT MICHAEL MORTON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING CHANGE OF VENUE [33]** |
|      v. | |
| PERRY MANN; MICHAEL MORTON, | |
|              Defendants. | |

## I.    INTRODUCTION

On September 12, 2013, Defendant Michael Morton moved to dismiss Plaintiff Jason A. Perlow's First Amended Complaint ("FAC") for defamation and conspiracy to defame under Federal Rule of Civil Procedure 12(b)(2).   (ECF No. 33.) Alternatively, Morton moved to transfer venue to the United States District Court for the District of Nevada under 28 U.S.C. § 1404(a).  (*Id.*)  Morton argues that California lacks personal jurisdiction over him and that Nevada provides a more convenient forum for all parties.  (Mot. 3, 8.)  For the following reasons, the Court **GRANTS** Morton's Motion to Dismiss for Lack of Personal Jurisdiction and **DENIES** Morton's Motion to Transfer Venue.[1]

---

[1] Having carefully considered the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P.78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Perlow, Mann, and Morton are co-investors in NM Ventures, a nationwide business group that operates entertainment venues at the Palms Hotel and Casino in Las Vegas, Nevada.  (FAC ¶ 14.)  The Venture operates through an entity called N9NE Group.  (*Id.*)  On August 8, 2012, Defendant Perry Mann sent the following alleged email to Perlow, copying several other members of NM Ventures: "Perlow—I respect your loyalty to your pals SY but let's all remember you where [*sic*] the schmuck that got caught doing blow in the elevator at the Palms and subsequently banded [*sic*] from all the N9NE Venus [*sic*]."  (FAC ¶ 19.)

An hour later, Mann allegedly sent another email to reiterate his previous statement:  "You [Perlow] were banned from the N9NE venues by the mangers [*sic*], that's a fact my friend."  (FAC ¶ 24.)   Because the Venture is a nationwide organization, investors in California, Illinois, New Mexico, Nevada, and Colorado received the email.  (Silver Decl. Ex. I at ¶ 6.)  The parties also hail from different states: Perlow resides in Chicago, Illinois; Morton lives in Las Vegas, Nevada; and Mann lives in Manhattan Beach, California.  (FAC ¶¶ 7, 9.; Mann Decl. Ex. H at ¶ 1.)

Morton served as NM Ventures's manager at the time Perlow allegedly used cocaine in the Palms Hotel elevator.  (Mann Decl. Ex. B. at ¶ 10.)  According to Mann, right before he sent the email, Morton "verbally told [him]" that Perlow had been caught using cocaine in the Palms Hotel elevator and had subsequently been banned from Palms' venues. (*Id.*)  Mann then sent the alleged email from his home in Manhattan Beach, California.  (Mann Decl. Ex. H at ¶ 10.)

In response to the allegedly defamatory emails, Perlow had George Maloof—a managing member of the Palms Hotel and Casino—send Perlow a letter, stating that Mann's claims were "totally false."  (FAC ¶ 29, Ex B.)  On August 9, 2012, Perlow's counsel sent a letter to Mann demanding that Mann retract the allegedly libelous comments.  (*Id.* Ex. C.)  Then on July 16, 2013, Perlow filed his FAC.  He added Morton as a defendant, alleging that Morton defamed and conspired to defame him by

1  communicating the allegedly defamatory material to Mann, who then republished the

2  statements in the email.  (FAC ¶ 36.)  On September 26, 2013, Perlow filed an Ex

3  Parte Application requesting limited jurisdictional discovery on the personal-

4  jurisdiction issue.  (ECF No. 40.)  The Court subsequently denied the Application,

5  finding that the requested jurisdictional discovery would be futile.  (ECF No. 41.)

6  Morton's Motion to Dismiss is now before the Court for decision.

7                          **III.   LEGAL STANDARD**

8         A defendant may move to dismiss a case for lack of personal jurisdiction under

9  Federal Rule of Civil Procedure 12(b)(2).   The plaintiff bears the burden of

10  demonstrating that jurisdiction exists.  *Love v. Assoc. Newspapers Ltd.*, 611 F.3d 601,

11  608 (9th Cir. 2010).

12        District courts have the power to exercise personal jurisdiction to the extent of

13  the law of the state in which they sit.  Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l,*

14  *L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988).   California's long-arm

15  jurisdictional statute is coextensive with federal due-process requirements.  Cal. Civ.

16  Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

17        For a court to exercise personal jurisdiction over a nonresident defendant

18  consistent with due process, the defendant must have sufficient "minimum contacts"

19  with the forum state so that the exercise of jurisdiction "does not offend traditional

20  notions of fair play and substantial justice."   *Int'l Shoe Co. v. Wash., Office of*

21  *Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).  Using the "minimum

22  contacts" analysis, a court may obtain either general jurisdiction or specific

23  jurisdiction over a nonresident defendant.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923

24  (9th Cir. 2001).  If the defendant's activities are insufficient to subject him to general

25  jurisdiction, then the court looks to the nature and quality of the defendant's contacts

26  in relation to the cause of action to determine whether specific jurisdiction exists.

27  *Data Disc, Inc. v. Sys. Tech. Assoc. Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

28  / / /

Under 28 U.S.C. § 1404(a), district courts have broad discretion to determine whether to transfer a case "according to an individualized, case-by-case consideration of convenience and fairness" for the parties and the witnesses involved. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Specifically, a court should consider the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3)the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof, . . . [(9)] the presence of a forum selection clause[,] . . . [and (10)] the relevant public policy of the forum state.

*Id.* at 498–99.

## IV.   DISCUSSION

Morton moves to dismiss the FAC for lack of general or specific jurisdiction and improper venue. Perlow responds that Morton is subject to personal jurisdiction in California because he owns and pays taxes on a house in Manhattan Beach, he allegedly purposefully defamed Perlow to a California resident, and the "effects of [his] defamation were felt in California." (Opp'n 8.) The Court addresses each of these arguments in turn.

### A.   General jurisdiction

Perlow argues that Morton is subject to general jurisdiction in California resulting from owning a house in Manhattan Beach.

A court has general jurisdiction over a defendant whose contacts with a state are "substantial" or "continuous and systematic," even if the action is unrelated to those contacts. *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.

1   2000).   In the general-jurisdiction inquiry, "substantial" has been recognized as a

2   fairly high standard.   *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir.

3   1984).   Given due-process concerns, the focus must be on the relationship among the

4   defendant, the forum, and the litigation.   *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

5   Moreover, a defendant's contacts must be of the sort that approximate physical

6   presence.   *Bancroft*, 223 F.3d at 1086.   Indeed, the defendant must be "essentially at

7   home" in the forum state to be subject to general jurisdiction.   *Goodyear Dunlop Tires*

8   *Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

9   Perlow argues that Morton is subject to general jurisdiction because he owns

10   property in California, has paid property taxes to the County of Los Angeles since

11   May 2008, and received "benefits" from owning the property like "trash removal, fire

12   and police services, the use of public beaches, etc."  (Opp'n 2, 19.)  Perlow adds that

13   Morton has minimum contacts with the forum state because he frequently conducts

14   business in California.  (FAC ¶ 9.)  Morton disagrees, arguing that he rarely visits his

15   Manhattan Beach house and his last California-related business venture was at the

16   latest in 2007.  (Reply 9.)

17   The Court finds that Morton is not subject to general jurisdiction in California.

18   First, Morton's Manhattan Beach property does not establish general jurisdiction.

19   While real property is a contact with the forum state, the mere presence of such

20   property is not dispositive of general jurisdiction.   *See Rush v. Savchuk*, 444 U.S. 320,

21   328 (1980).   Here, Morton's Manhattan Beach house is a single contact with

22   California, but this sole contact does not render Morton—a Las Vegas resident—

23   "essentially at home" in California.   *Id.* at 328.   And while Perlow exhaustively

24   attaches exhibits regarding Morton's property taxes and email exchanges showing that

25   Mann and Morton's families are acquaintances, the Court agrees with Morton that

26   "[a]s a matter of law, neither acquaintance, nor even friendship with a state's resident

27   subjects a party to the jurisdiction of that state."  (Reply 2.)  Finally, because Morton's

28   California house has nothing to do with the defamatory email that is the subject of this

litigation, the Court is not inclined to stretch due process in order to accommodate the conclusory jurisdictional facts that Perlow has presented.

Next, even if Morton facilitated the defamatory email by communicating with Mann in California, this act is insufficient to establish general jurisdiction.  *Gates*, 743 F.2d at 1331 (9th Cir. 1984) (characterizing telephone calls and letters to the forum state as "more occasional than continuous, and more infrequent than systematic").  Here, Perlow has only alleged that Morton communicated the defamatory material to Mann, a California resident, right before he sent the email.  This single contact falls far below the "extensive communications" that failed to establish general jurisdiction in *Gates*.

Perlow's argument that Morton conducts substantial business in California also fails.  Certain factors showing general jurisdiction are whether the defendant makes sales, solicits or engages in business in the state, or serves the state's markets.  *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1478 (9th Cir. 1986).  And general-jurisdiction business contacts have not been established under even stronger facts.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (sending a CEO to Houston for contract negotiations, training personnel in Fort Worth, and drawing checks from a Houston bank did not subject the defendant to general jurisdiction in Texas).  Beyond the vague allegation in the FAC that Morton "frequently conducts business" in California, and Morton's role on an April 2007 management project in Palm Springs, Perlow does not allege specific facts to demonstrate that Morton has continuous business contacts in California.  (*See* Gutierrez Decl. ¶ 6.)  Therefore, Morton's activity does not meet the high standard of general jurisdiction.

**B.    Specific jurisdiction**

Perlow also argues that Morton is subject to specific jurisdiction in California based on Perlow allegedly directing his defamatory comments to a California resident.

/ / /

Even if a defendant is not subject to general jurisdiction, specific jurisdiction applies when the cause of action arises from the defendant's purposeful contact with the forum state. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). The three-factor test adopted by the Ninth Circuit requires the plaintiff to show that (1) the nonresident defendant has purposefully directed his activities or consummated some transaction with the forum state; (2) the claim arises out of or relates to the defendant's forum-related activity; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The first prong is evaluated under the *Calder* effects test. Under this test, the defendant must have (1) committed an intentional act; (2) which was expressly aimed at the forum state; and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *see Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) (reasoning that allegedly defamatory articles did not have an effect on California, because they could not be seen as a comment on a California event and plaintiffs did not allege that California was a primary audience for the medical journals). Further, in a defamation action, the circulation of defamatory material in the forum state is an important factor in the minimum-contacts analysis. *Cas. Assurance Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 599 (9th Cir. 1992).

Perlow avers that Morton is also subject to specific jurisdiction in California because he (1) intentionally defamed Perlow to Mann; (2) directed the defamatory statements at the state of California and one of its residents; and (3) knew that the harm from his alleged defamation would be felt in California. (Opp'n 2.) But Morton responds that he did not purposefully direct his defamatory email at California. (Mot. 6.) Morton cannot be subject to specific jurisdiction, because he did not purposefully direct his defamatory activity at California. While circulation of the libel in the forum state is a key factor in the specific-jurisdiction inquiry, the Court does not

1    see how uttering defamatory statements to a single California resident about an Illinois
2    resident constitutes "circulation."   As the Court explained in its Order Denying
3    Perlow's Ex Parte Application, "one conversation [between Morton and Mann] would
4    pale in comparison to targeting a state's residents with a widely circulated magazine."
5    (ECF No. 41, at 2.)  Here, as in *Core-Vent*, the allegedly libelous email was circulated
6    to Venture recipients all over the country—rather than exclusively California.  Perlow
7    has not established that California was the "primary audience" for the defamatory
8    remarks.

9          Moreover, the brunt of the harm was not suffered in California.  Perlow and
10    Morton squabble over whether Morton knew that Mann was located in California
11    when he encouraged the republication of the allegedly defamatory remarks.  But the
12    *Calder* effects test focuses on the harm to the *plaintiff*, rather than the location of the
13    defendants.  *Calder*, 465 U.S. at 788–89.  In *Calder*, the Supreme Court found that
14    California had specific jurisdiction over two Florida newspapermen for an allegedly
15    libelous story written about a Californian actress.  The Court explained that the
16    "effects" of defendants' article were felt in California because California was the
17    "focal point of both the story and of the harm suffered." *Id.* at 789.  Specifically, the
18    article attacked the professionalism of a California-based entertainer, drew upon
19    California sources, and caused the actress emotional distress and injury in California.
20    *Id.*

21          But here, the defamatory email attacked the professionalism of Perlow, an
22    Illinois resident, and the focus of the email was on an incident at the Palms Hotel and
23    Casino, which is located in Nevada.  Because the "effects" of the defamatory email
24    were felt in Illinois or Nevada, these forums would more likely have jurisdiction over
25    Morton than California.

26          Additionally, the brunt of the harm from a defamatory statement can be felt at
27    an individual's domicile. *See Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d
28    1257, 1259 (9th Cir. 1989) (holding that the defendant knew the plaintiff would suffer

harm in Arizona from an allegedly defamatory phone conversation because the plaintiff lived and worked in Arizona).  Here, the bulk of the harm—that Perlow was a "schmuck" caught doing blow in the Palms hotel—was felt either in Illinois, where Perlow lives and works, or even in Nevada, the site of several N9NE business ventures—not in California.

While Perlow correctly cites *Keeton* for the proposition that a plaintiff's residence in the forum state is not a requirement for specific jurisdiction, in *Keeton* the defendant, *Hustler* magazine, could reasonably anticipate being haled into New Hampshire court because it "continuously and deliberately exploited the New Hampshire market."  *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 (1984).  While the Court does not predicate its reasoning on the sole fact that Perlow is not a California resident, here, unlike in *Keeton*, Morton has not continuously exploited the California market through a magazine; rather, he allegedly communicated a defamatory remark which later surfaced in a single email.

Accordingly, the Court finds that Morton is not subject to either general or specific jurisdiction in California and **GRANTS** Morton's Motion to Dismiss for Lack of Personal Jurisdiction.

## C.   Venue

Both parties disagree whether California or Nevada is the most convenient forum for witnesses and evidence.  Under 28 U.S.C § 1404(a), a district court may transfer a civil action to any other district where it may have been brought.  The statute provides three factors for a court to consider in deciding upon a motion to transfer: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

The Court declines to transfer this case to the District of Nevada because transferring the case will just present the same jurisdictional dilemma but in reverse.  Were the case to proceed in Nevada, Mann—a California resident—may not be

subject to personal jurisdiction in that state.  The District of Nevada would then have exactly the same problem this Court currently faces.  Accordingly, the Court **DENIES** Morton's Motion to Transfer Venue.

**V. CONCLUSION**

For the reasons discussed above, the Court **GRANTS** Morton's Motion to Dismiss for Lack of Personal Jurisdiction and **DENIES** Morton's Motion to Transfer Venue.  (ECF No. 33.)

**IT IS SO ORDERED.**

October 22, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**