O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON A. PERLOW,<br><br>        Plaintiff,<br>    v.<br>PERRY MANN; MICHAEL MORTON,<br><br>        Defendants. | Case No. 2:13-cv-00749-ODW(SHx)<br><br>**ORDER DENYING DEFENDANT PERRY MANN'S SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 [29]** |

## I. INTRODUCTION

Defendant Perry Mann brings this Motion under California's anti-SLAPP[1] statute, California Code of Civil Procedure section 425.16, to strike Plaintiff Jason A. Perlow's entire First Amended Complaint in which Perlow brings claims for defamation and conspiracy to defame. (ECF No. 23.) Because Mann has failed to show how a private email group constitutes a public forum and how his accusations bear upon a public issue, Mann fails to carry his burden under the anti-SLAPP statute. The Court therefore **DENIES** Mann's Special Motion to Strike.[2]

## II. FACTUAL BACKGROUND

Perlow was engaged in two private business ventures with Nine Group, LLC (the "Group"), a group of investors including Defendants Mann and Michael Morton.

---

[1] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation."

[2] After carefully considered the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

(Perlow Decl. ¶¶ 4–5.)  The Group's main investments dealt with owning and operating entertainment venues located within the Palms Hotel in Las Vegas, Nevada. (*Id.* ¶¶ 4–5.)  But when profits began to sour, the Group broke into factions, debating via email the course that the Group should take. (*Id.* ¶¶ 7–8.)  Resulting litigation lead Morton to sell his interest and leave his position as the operating manager of the Palms Hotel Venues. (*Id.* ¶ 8.)

Sometime later, the Group decided to sell its interest to a third party and used Silver Young Capital, LLC—a private-equity firm that was also a primary investor in the Group—to negotiate the sale. (*Id.* ¶¶ 9–10.)  Not everyone in the Group felt that Silver Young Capital had negotiated a good deal, and the differing factions once again took to their private email forum to debate the deal. (Mann Decl. ¶ 4.)

One faction—which included Mann—believed that the Group would have been much more profitable had Morton remained the operating manager—an opinion expressed to the forum by Mann. (*Id.* ¶ 6.)  Perlow, coming to the defense of Larry Silver and Alan Young of Silver Young Capital, the Group's current managers, countered by pointing out Morton's failing business ventures. (Mann Decl. ¶ 14; Perlow Decl. ¶ 7.)  Mann responded to the 33 members engaged in the Group discussion with a response aimed at Perlow, allegedly stating:

> Perlow—I respect your loyalty to your pals [Silver and Young] but let's all remember you where [*sic*] the schmuck that got caught doing blow[3] in the elevator at the Palms and consequently got banded [*sic*] from all the [Group] Venues.  Your creditability [*sic*] is weak my friend so take a back seat where you belong. . . .

(Mann Decl. ¶ 9, Ex. E; Perlow Decl. ¶ 15.)

This email started a debate between Perlow and Mann as to the truth of Mann's allegations against Perlow contained in the email. (Perlow Decl. ¶¶ 17–19.)  Mann declares that Morton verbally told him these alleged facts about Perlow immediately

---

[3] "Doing blow" means using cocaine. (Mann Decl. ¶ 9.)

before he emailed them and that Andy Belmonti,[4] the former president and manager of a subset of Palms venues, subsequently confirmed these allegations. (Mann Decl. ¶¶ 10–11.) Belmonti denies confirming these facts and declares that he knows of no such incident involving Perlow. (Belmonti Decl. ¶¶ 6–8.) Perlow categorically denies that this event occurred.

On February 4, 2013, Perlow brought an action for defamation and conspiracy to defame against both Mann and Morton for the allegedly "[l]ibelous [s]tatements" contained in Mann's email. (ECF No. 23.) On August 27, 2013, Mann moved to strike Perlow's Complaint under California's anti-SLAPP statute, California Code of Civil Procedure section 425.16. (ECF No. 29.) Perlow timely opposed. (ECF No. 37.) That Motion is now before the Court for decision.

## III.  LEGAL STANDARD

California's anti-SLAPP statute allows defendants in courts applying California substantive law to counter suits by making a special motion to strike a claim if that claim arises from an act by the defendants to further their right of petition or free speech in connection with a public issue. *Id.* § 425.16(b)(1); *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (concluding that the twin aims of the *Erie* doctrine "favor application of California's anti-SLAPP statute in federal cases"). An act qualifies for protection under this statute if it falls within one of four categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law[;] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[;] (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public

---

[4] Perlow did not name Belmonti as a defendant in this case.

3

interest[;] or (4) any conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425.16(e).

In considering an anti-SLAPP motion, a court must engage in a two-step process. First, the court determines whether the defendants have made a prima facie showing of whether the plaintiff's claims arise from a protected act under the statute. *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1061 (Ct. App. 2005). To make this determination, the court looks to any pleadings or affidavits that state facts supporting or refuting the parties' theories of liability or defense regarding the claim. *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (Ct. App. 2003).

If the defendant establishes this prima facie showing, the burden then shifts to the plaintiff to demonstrate "a probability that [he] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The plaintiff must provide admissible evidence to establish that "the complaint is legally sufficient and supported by a prima facie showing of facts [that] sustain a favorable judgment." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). If the plaintiff fails to make this showing by a preponderance of the evidence, the court must grant the motion to strike and award the prevailing defendant his or her attorney's fees and costs. *Ingles*, 129 Cal. App. 4th at 1061–62; Cal. Civ. Proc. Code § 425.16(c)(1).

## IV.  DISCUSSION

Mann's primary argument addresses the first prong of an anti-SLAPP analysis, that is, whether his email constituted conduct in furtherance of his right of free speech concerning a public issue. (Mot. 8.) Additionally, Mann argues that his email is protected as a statement made in a public forum concerning an issue of public interest. (Mot. 10.) Mann further asserts that Perlow does not have a strong probability of prevailing on the defamation claims, because his comments were "privileged" under

1 California Civil Code section 47, which therefore requires Perlow to prove that Mann
2 acted with malice in order to prevail. (Mot. 12.)

3 Perlow challenges Mann's arguments, claiming that Mann's statements had no
4 connection to a public issue or issue of public interest and that the statements were
5 made in a private business discussion—not a public forum. (Opp'n 7–8.) Perlow
6 further argues that even if the Court finds that Mann's conduct was protected, Perlow
7 still has a strong probability of prevailing on his defamation claims. (Opp'n 16.)
8 Perlow argues that Mann's statements are libel per se—or "libel on its face"—under
9 California Civil Code section 45a and that Mann failed to exercise reasonable care to
10 determine the truth of his statements. (*Id.* at 17.)

### A. Mann's alleged statements do not qualify for protection under California's anti-SLAPP statute

13 Mann's primary argument for protection under the anti-SLAPP statute is that
14 his statements are protected as "conduct in furtherance of the exercise of [his] . . .
15 constitutional right of free speech in connection with a public issue or an issue of
16 public interest." Cal. Civ. Proc. Code § 425.16(e)(4). The constitutional right of free
17 speech does not cover defamation. *Weinberg v. Feisel*, 110 Cal. App., 4th 1122, 1131
18 (Ct. App. 2003). But since Perlow has yet to prove that he has been defamed, the
19 Court must turn its attention to the meaning of "public issue" and "issue of public
20 interest" to resolve this Motion.

21 Within the meaning of the anti-SLAPP statute, courts have construed the term
22 "public interest" broadly to include not only governmental matters but also private
23 conduct that impacts broad segments of society or affects a community in a manner
24 similar to that of a governmental entity. *Integrated Healthcare Holdings, Inc. v.*
25 *Fitzgibbons*, 140 Cal. App. 4th 515, 523 (Ct. App. 2006). "Public interest" also
26 includes activities involving private persons and entities, especially when a large,
27 powerful organization may impact the lives of many individuals. *Du Charme v. Int'l*
28 *Bhd. Of Elec. Workers, Local 45*, 110 Cal. App. 4th 107, 115 (Ct. App. 2003). But

1  when the interest involves "a limited, but definable portion of the public (a private
2  group, organization, or community), the constitutionally protected activity must, at a
3  minimum occur in the context of an ongoing controversy, dispute or discussion, such
4  that it warrants protection by a statute that embodies the public policy of encouraging
5  *participation* in matters of public significance." *Id.* at 510.  Although "public issue"
6  and an "issue of public interest" are used disjunctively in the statute, there appear to
7  be no substantive differences between them when applied.  *See Du Charme*, 110 Cal.
8  App. 4th at 118–119.

9        Mann argues that his statements were not only made in connection with
10  Perlow's credibility as a commentator in the investor dispute, but also with respect to
11  Perlow's drug use—an issue Mann contends concerns the public with respect to
12  Nevada gaming establishments.  (Mot. 9.)

13        The Court disagrees.  The context of the email shows that Mann's statements
14  relate only to Perlow's credibility within the Group's narrow confines.  The discussion
15  concerned the best course of action for the Group and the sale price that Silver Young
16  Capital had negotiated with the third-party buyer.  While the public may well be
17  interested in whether casino management personnel use narcotics in their
18  establishments, Mann's alleged email did not address the public.  There is no
19  indication that anyone other than the 33 investors on the closed email chain witnessed
20  Mann's alleged statements.  Since Mann's statement appears to have only impacted
21  this narrow investor group, the Court finds that Mann has not established that his
22  email constituted statements on a public issue or a matter of public interest.

23        Mann's secondary argument is that his statements qualify for protection as
24  statements "made in a place open to the public or a public forum in connection with an
25  issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3).  Public fora are places
26  open to the use of the general public for purposes of assembly, communicating
27  thoughts between citizens, and discussion of public questions; they are not means of
28  communication with selective access.  *Weinberg*, 110 Cal. App. 4th at 1131.  A public

forum is a "vehicle for communicating a message about public matters to a large and interested community." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 476 (Ct. App. 2000).

The Court is not persuaded that the private email group of limited membership involved in this case constitutes a public forum. While the narrow class of individuals on the emails may have been interested in the discussions of the Group, it is a stretch to consider these people akin to a large community. Mann's email went out to just 33 email addresses—a far cry from the 3,000 recipients of the newsletter found to be a public forum in *Damon*. *See* 85 Cal. App. 4th at 476. If Mann's email truly concerned drug use in Las Vegas gaming establishments as Mann states, then his problem is that nowhere close to all interested parties had access to this email forum. This type of selective correspondence hardly qualifies as a public forum.

Without a public issue or issue of public interest, Mann's alleged comments do not qualify for protection under California's anti-SLAPP statute. Additionally, Mann failed to establish how a private group of 33 investors discussing their investment constitutes a public forum. The Court therefore finds that Mann has not established a prima facie case of engaging in a protected activity.

**B. Perlow has demonstrated a strong probability of prevailing on his defamation claims**

Perlow argues that even if the Court finds that Mann's statements were protected acts under the anti-SLAPP statute, he still meets his burden of demonstrating a strong probability of success on the merits of his defamation and conspiracy-to-defame claims. (Opp'n 16.) In California, defamation is either libel or slander. Cal. Civ. Code § 44. Slander results from oral or audible communications. *Id.* § 46. Libel is a false and unprivileged publication by writing or other fixed representation to the eye, which exposes any person to injury in his occupation. *Id.* § 45; *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). Libel that is defamatory without requiring explanation is libel on its face, or libel per se, and is

actionable without the need to prove damages. Civ. Code § 45a; *Walker v. Kiousis*, 93 Cal. App. 4th 1432, 1441 (Ct. App. 2001). False allegations of criminal conduct are one example of libel per se. *Weinberg*, 110 Cal. App. 4th at 1136. Additionally, the California Court of Appeal has noted that "liability for libel may be imposed on a conspiracy theory." *Sheppard v. Freeman*, 67 Cal. App. 4th 339, 349 (Ct. App. 1998).

Mann's alleged comments about Perlow constitute libel per se. While Perlow styles his causes of action as defamation, his allegations in fact only refer—appropriately so—to "[l]ibelous [s]tatements." (FAC ¶¶ 17–57.) Perlow has declared that the accusations in Mann's emails are false. (Perlow Decl. ¶¶ 21–22.) As these allegedly false statements were of criminal conduct and published via email they are libelous per se, and California law thus presumes general damages to Perlow's reputation. *Clark v. McClurg*, 215 Cal. 279, 284 (1932).

Instead of challenging the truthfulness of the statements, Mann instead relies upon the privilege defense under California Civil Code section 47. (Reply 6.) Publications are protected by privilege when they are made,

> In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

Cal. Civ. Code § 47(c); *SDV/ACCI*, 522 F.3d at 961. Further, the applicability of the Section 47(c) privilege provision is a question of law only when there is no dispute as to the facts alleged which give rise to the privilege. *See SDV/ACCI*, 522 F.3d at 961.

Mann argues that this privilege applies to his communications because they were between and among interested parties, and they were made without malice. (Mot. 6.) Perlow argues that these "statements were not made in furtherance of a common interest and they were clearly made with malice." (Opp'n 19.) While Mann may potentially be able to establish that this privilege defense applies, he has not

demonstrated at this early stage in the litigation that he did not act with malice in making his comments about Perlow. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 676 (2005) (noting that the defendant bears the burden of proof on an affirmative defense). The Court therefore finds that Perlow has demonstrated a strong probability of success on the merits of his defamation claims.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Mann's anti-SLAPP Motion. (ECF No. 29.)

**IT IS SO ORDERED.**

October 22, 2013

_____
           **OTIS D. WRIGHT, II
    UNITED STATES DISTRICT JUDGE**